UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | :  Criminal Case Number 07-0199(EGS) |
| STEVE R. HOUCK, | : |
| Defendant. | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING
AND MOTION FOR ADJUSTMENT OF OFFENSE LEVEL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its memorandum in aid of sentencing and, pursuant to U.S.S.G. §3E1.1(a), for adjustment of offense level because of the defendant's early acceptance of responsibility in this case.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. The facts underlying the charged offense in this case are set forth in detail in the Presentence Investigation Report submitted to the Court. Accordingly, we will not restate them in detail here, but rather, adopt and incorporate herein, the factual recitation contained in Paragraphs 6 through 13 of that report. We note in addition, the following:

2. During the period when the defendant was communicating with Detective Palchak, Federal Bureau of Investigation (FBI) agents attempted to determine his identity by identifying the individuals assigned the Internet Protocol (IP) addresses used the defendant. The addresses resolved back to a number of different businesses and individuals. Eventually investigators determined that the defendant, who had a technical background, was using unsecured wireless

connections, including wireless connections of some of his neighbors, to access the Internet and communicate with Detective Palchak.

3. During a search of his residence on July 2, 2007 pursuant to a warrant issued by the United States District Court for the Eastern District of Virginia, various data storage devices were recovered by agents of the Federal Bureau of Investigation. Forensic analysis determined that there were over 3,000 images of child pornography located on the devices. Approximately forty known victims of child pornography were identified in the images by the National Center for Missing and Exploited Children (NMEC).

4. Immediately following the defendant's arrest in Fairfax, Virginia, he waived removal to the District of Columbia and gave a videotaped statement in which he admitted his involvement in the charged offense and that he collected and distributed child pornography on-line with other individuals. He also attempted to assist authorities by providing potentially useful information to them.

5. After waiving his rights to a preliminary hearing and agreeing to be detained without bond, the defendant entered into a plea agreement with the government pursuant to which he agreed to plead guilty to the offense of transportation of child pornography based on his sending via the Internet a single image of child pornography to Detective Palchak. He agreed also to acknowledge as relevant conduct, the amount and nature of the child pornography seized during the search of his residence in Virginia.

6. In exchange for the defendant's plea of guilty, the government agreed not to prosecute him for any other related offenses. Those charges could have included the offense of attempted enticement of a minor based on his efforts to arrange a sexual encounter with a minor child in

the District of Columbia, and possession and/or distribution of child pornography in the Eastern District of Virginia.[1]

**SENTENCING RECOMMENDATION**

**The Sentencing Guidelines**

<u>Application of the Sentencing Guidelines</u>

7. In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). <u>Booker</u>, 125 S. Ct. at 756.

8. Nonetheless, and as the Supreme Court stated recently, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. <u>See</u> <u>United States v. Gall</u>, ___ U.S. ___, 128 S.Ct 586, 589, ( 2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). The district court should then allow the parties to argue for a particular sentence, and consider all of the applicable factors set forth in Title 18 United States Code, Section 3553(a). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford

---

[1] If convicted of the offense of attempted exploitation of a minor the defendant would be subject to a mandatory minimums sentence of 10 years. If he were prosecuted and convicted in the Eastern District of Virginia, he would be subject to a mandatory term of at least ten years imprisonment for the offense of possession of child pornography, and a mandatory minimum term of 15 years imprisonment for distribution of child pornography.

adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)). The court then makes an individualized assessment of whether the Guidelines range is reasonable based on the facts presented. Id. While there is no presumption that a Guideline sentence is reasonable in any particular case, if the court imposes an outside-the-Guidelines sentence, it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variation. Gall at 589.

    9.   In the instant case, for the reasons set forth in this memorandum, the government submits that a Guidelines sentence is appropriate and should be imposed. The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. See United States v. Rita, ___ U.S. ___, 127 S.Ct. 2456 (2007). The Guidelines represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"). And the Sentencing Commission has continued to study district court and

appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766-67 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

10.  The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by Section 3553(a)(1). The Guidelines themselves thus seek to implement – in a fair and uniform way – the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in Gall.

### Determining the Guideline Range

11.  The Presentence Investigation Report writer has calculated the defendant's sentencing guideline range at 235-293 months based on a total offense level of 37 and a criminal history category of II. The parties are in agreement that most of the Specific Offense Characteristics set forth in the PSI report are applicable in this case. A significant exception is §2G2.2(b)(3)(B), which we discuss further below.

12.  There is no dispute that the defendant distributed well over 600 images by means of a computer; the images involved children clearly below the age of twelve years. Moreover, as set forth in the PSI report and the Statement of Offense filed with the Court, the images included images of violent sexual abuse of children. Courts repeatedly have held that sexual penetration of a young child is sadistic or violent conduct within the meaning of §2G2.2(b)(2)(4). See e.g. United States v. Johnson, 450 F.3d 831, 834 (8th Cir. 2006) (sexual penetration of a minor female by an adult male is per se sadistic); United States v. Diaz, 368 F.3d 991, 992 (8th Cir.

2004) (images depicting sexual penetration of a minor girl by an adult male with his penis, a young boy performing fellatio on an adult male, an adult male preforming anal sex on a minor girl are sadistic or depictions of violence); <u>United States v. Hall</u>, 312 F.3d 1250,1261-63 (11th Cir. 2002) (images showing vaginal or anal penetration of a prepubescent minor are sadistic); <u>United States v. Lyckman</u>, 235 F3d 234, 238-39 (5th Cir. 2000) (when image shows an adult male engaging in sexual intercourse with a young girl the conduct shown is sufficiently painful, coercive, abusive and degrading to qualify as sadist or violent);  <u>United States v. Canada</u>, 110 F.3d 260, 264 (5th Cir. 1997 )(same).

    13.  In the plea agreement between the parties, the parties did not stipulate to the applicability of  U.S.S.G. §2G2.2(b)(3)(B) which provides for a five level enhancement of the base offense level where the defendant transports child pornography with the expectation that  he would receive a non-pecuniary benefit in return.  The plea agreement expressly provides, however, that either party may argue for or against the applicability of any specific offense characteristic or adjustment not specifically referenced in the agreement. The defendant objects to the application of this provision of the Guidelines. The government believes that the record supports its application.

    14.  Based on the case law and the record in this case, the government believes that there is a factual basis upon which the Court can conclude that the defendant sent an image of child pornography to the undercover officer with the expectation that the officer would send an image of child pornography in return  for the purpose of establishing that neither was a law enforcement officer. The defendant sent the image of child pornography during the initial conversation with the undercover officer,  Detective Timothy Palchak, on June 12, 2007. Because of the method the

defendant used to transfer the image ("Photoshare"), there is no record in the transcript of the precise point in the conversation during which the photograph was sent or received. Detective Palchak, in reviewing the transcript, recalls that the image was sent to him during the portion of the conversation in which the defendant states that he was willing to "exchange a good faith pic". When Detective Palchak asked "what kind of good faith pic", the defendant replied "underage nude", "a naked whole body shot showing her pussy." (Transcript 6/12/07 9:43 p.m.-9:49 pm). Earlier in the same conversation, when Palchak said that he paid a prostitute to allow him to have sex with her ten year-old daughter, the defendant expressed interest and said that he "would like to see a commitment pic to know you are for real". I will commit to the price for her." (Tr. 6/12/07 at 9:16 p.m).

    15. We acknowledge that record does not contain any explicit agreement between the defendant and Detective Palchak with respect to exchanging child pornography. Such an explicit agreement is not required, however. The Second Circuit has held that while the enhancement for distribution of child pornography in the expectation of non-pecuniary gain may apply in absence of a quid pro agreement between the distributor and the recipient of the child pornography, in order for the sentencing court to apply it, the court must find that the distributor expected, rather than merely hoped, to receive something of value in return: "... the provision is implicated if the distributor expects-rather than just hopes-to receive a thing of value." United States v. Maneri, 353 F.3d 165, 170, (2nd Cir 2003). Where the defendant distributes child pornography for the purpose of enticing another person to have sex with him, the enhancement for expectation of a benefit is applicable.) Canada, 110 F.3d at 263 (holding that where the defendant attempted to entice a purported 13 year old male to engage in sexual acts with him, and

sent child pornography to the purported minor, the sentencing court correctly concluded that the defendant distributed the material for the purpose of enticing the minor to have sex with him and enhancement was applicable). United States v. Garrett, 190 F.3d 1220 (11th Cir. 1999) ( district court did not clearly err in applying upward adjustment and concluding that defendant sent child pornography to an undercover officer posing as a 15 year-old girl in an effort to seduce the fictitious child).

    16.  The determination of whether to apply the disputed guideline adjustment necessarily requires the Court to make conclusions concerning the defendant's state of mind when he sent the image of child pornography. In the instant case, the defendant sent the image and at that point in the on-line conversation spoke of exchanging "good faith" pictures, asking Detective Palchak to send him a picture of a nude underage child in which the child's genitalia were displayed.  It was Detective Palchak's understanding, based on his experience in acting in an undercover capacity in child exploitation cases, that the defendant's sending child pornography and asking that it be sent to him in return, was a method of confirming that neither of them was a law enforcement officer. That assurance was the non-pecuniary benefit the defendant expected in return for sending the image to Detective Palchak.

    17.  The government hereby moves pursuant to §3E1.1(a) that the defendant's offense level be decreased three levels to reflect his early acceptance of responsibility and his timely notification to the government of his intent to enter a guilty plea in this case.

    18.  If the Court finds that §2G2.2(a)(3)(B) is applicable, the defendant's sentencing guideline range is 235 to 293 months incarceration. If the Court concludes that the adjustment does not apply, the defendant's sentencing guideline range would be 168 to 210 months.

Because the Court must impose a minimum sentence of 15 years, however, the actual sentencing range would be 180 to 210 months.

**Additional Sentencing Factors**

19  Factors to be to  be considered by the Court in imposing sentence in a particular case are set forth in 18 U.S.C. § 3553. In addition to the sentencing range as determined by the Sentencing Guidelines, the Court is directed to consider the nature and circumstances  of the offense and the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the need to avoid unwarranted sentencing disparity and the need to provide restitution to any victims of the offense. We address these factors below.

.        <u>Nature and Circumstances of the Offense</u>

20.  The defendant has pled guilty to a single count of transportation of child pornography based on his having sent a single image of child pornography via the Internet to the District of Columbia. The image was sent during the course of a conversation in which the defendant indicated in explicit terms his interest in engaging in sex with a ten year old child.  Indeed, a reading of the on-line communications between the defendant and Detective Palchak over a period of weeks, leads to the conclusion that the defendant's primary interest in communicating with Palchak was to gain access to the child, rather than in trading child pornography.

21.  Nevertheless, in considering the circumstances of the offense, the Court considers as relevant conduct, the defendant's possession of thousands of additional images of child pornography.[2]  The images include still images and videos depicting virtually every form of

---

[2] The Presentence Investigation Report writer notes that the large number of images would be grounds for an upward departure.  The terms of the plea agreement provide that neither party will seek a departure from the otherwise applicable guideline range, although they are free

sexual abuse of children. Some of the images are described in the PSI report. They include for example, videos of of a young girl who appears to be under the age of seven in one case being penetrated vaginally by an adult male, another young girl approximately seven years old being penetrated vaginally and anally by a dildo, a pre-prepubescent girl about eight years old being vaginally penetrated by an adult male while her wrists are duct taped to her legs, an adult male performing cunnilingus and vaginally penetrating a young pre-prepubescent girl whose legs are tied with ropes and whose wrists are tied over hee head, video of young girls approximately five and seven years old performing fellatio on adult males. [3]

    22.  While the defendant himself did not sexually abuse the children, his collecting and trading images of their abuse resulted in significant harm to them and other potential victims. First, the defendant re-victimized children in sharing images of their abuse and degradation. The children in the images he collected, viewed and distributed are not cartoon characters; they are real children who were exploited, degraded and in some cases literally tortured in the production of the child pornography he collected and shared.  They will remain victims as long as images of their abuse are collected and distributed.  Since the Internet has become the distribution medium of the images, the degradation of these children is permanent, continuous, and impossible to eradicate.

---

to allocate for sentence outside of the Guidelines. In this case in which the Guidelines, calculated without any upward departures, provide for a substantial period of incarceration, the government considers that an upward departure based on the number of images would not serve to effectuate the sentencing goals set forth in 18 U.S.C. §3553(a) and is not warranted.

    [3] All of the images of child pornography in this case are available for the Court's review. While we are prohibited from copying the material, we can make it available to the Court for its in camera review.

23. In some cases, victims and/or their families have provided statements to be submitted to the courts in cases where the child's image has been identified. We are submitting several to the Court with this memorandum.[4] Their letters state far more powerfully than any submission of counsel could the continuing pain suffered by the victims when their images are viewed and distributed by individuals like the defendant who derive sexual satisfaction from watching their abuse and humiliation.

24. In addition to re-victimizing the children whose images he collected and distributed, the defendant's acts served to encourage the production of child pornography and the sexual abuse of the children used to create it. By collecting child pornography, the defendant and others like him provide an incentive for its production. The Ninth Circuit has articulated that "commercial child pornography" (images obtained from the Internet, just like those possessed and distributed by this defendant) is an industry targeted by Congress; moreover, the most effective method of eradicating the industry is to punish the ultimate consumer. United States v. Adams, 343 F.3d 1024, 1034 (9th Cir. 2003).

> Th[e] legislative history leads us to three observations: (1) Congress determined that child pornography is a multi-million dollar industry in which sexually explicit depictions of children are bought, sold, and traded interstate; (2) Congress decided to "stamp out" the market for child pornography by criminalizing the production, distribution, receipt, and possession of child pornography; and (3) Congress thought it could strike a blow to the industry by proscribing possession of child pornography "because those who possess and view child pornography encourage its continual production and distribution."

---

[4] Pursuant to 18 U.S.C. §3509(d)(2) we are filing under seal two copies of each letter. One copy has identifying information concerning the identity of the victims. The second copy has been redacted to remove the identifying information. In accordance with the statute, we ask that only the redacted versions of the letters be placed in the public record and that the unredacted versions be maintained under seal.

Id. at 1032, citing 136 Cong. Rec. at S4730 (emphasis in original).

<u>The History and Characteristics of the Defendant</u>

25. The defendant is an obviously intelligent, well-educated, generally law abiding citizen, who has a sexual interest in children and whose conduct has shown clearly that he cannot or will not control his behavior with respect to that interest. He has repeatedly demonstrated that he is willing satisfy his sexual interest in children by collecting and distributing images of their abuse, and even attempting to engage in sex with them.

26. As set forth in the PSI report, the defendant previously was convicted of distribution of child pornography; in fact his supervised release in that case terminated only in November 2006. In the earlier case, he distributed images of child pornography and was found in possession of over a thousand of them. Significantly, as in the instant case, he also attempted to make arrangements on-line to meet underage females for the purpose of having sex with them. Even after serving a term of imprisonment, being on supervised release and receiving counseling, the defendant quickly reverted to the same behavior that resulted in his earlier conviction. The sheer volume of child pornography found in his residence at the time of his arrest is indicative of the extent to which his time was spent collection these images. And his conversations with Detective Palchak make clear that he continued seek out opportunities to engage in sex with a young child.

27. As his history clearly demonstrates, the defendant is a pedophile who has demonstrated his continued willingess to break the law to to satisfy his sexual interest without regard to the harm he causes to child victims or their families. At the same time he has freely admitted his guilt, accepted responsibility for his conduct, and attempted to assist law

enforcement. An appropriate sentence in this case is one that will reflect the Court's consideration of both aspects of his character.

### Need for the Sentence to be Imposed

28. Consideration of the factors set forth in Section 3553(a) leads to the conclusion that a sentence of a substantial period of incarceration followed by close supervision is warranted in this case. Only a lengthy sentence imprisonment is adequate to reflect the seriousness of offenses involving the abuse and exploitation of children, and to deter the defendant and others who would use the Internet to collect and trade images of child sexual abuse.

29. Short of incarceration, at this time there is no realistic means of ensuring that the defendant will not continue to trade child pornography and to obtain access to children. The defendant faces a mandatory minimum sentence of 15 years incarceration. We ask that in imposing sentence the Court take consider also the extent to which the Guidelines take into account significant factors in this case and would therefore be an appropriate sentence.

30. First, a sentence within the applicable advisory Sentencing Guidelines range would serve to avoid unwarranted sentencing disparities among defendants who have committed similar offenses. Moreover, it also would be an appropriate sentence in this particular case for the following reasons. The Guidelines calculations in this case take into account the facts of the case that are most significant to sentencing, the volume and nature of the child pornography that he collected, his motivation in distributing it in his case, and his criminal history. At the same time a Guideline sentence takes into account the defendant's willingness to accept responsibility and to enter an early guilty plea in this case. The Guidelines also provide for a substantial period of incarceration, which for the reasons set forth previously, is warranted and necessary in this case.

**Conclusion**

      31. The government recommends that the Court impose a sentence of between 210 and 235 months incarceration followed by lifetime supervised release. (A sentence of 235 months would be the low end of the advisory Guideline range if the Court accepts the calculations set forth in the Presentence Investigation Report; 210 months is the high end of the Guideline range if the Court deems that the contested adjustment pursuant to §2G2.2 is not applicable). Most importantly, the sentence in this range, between 17 and 19 years, would serve the sentencing goals of deterrence, protection of the community, and punishment.

      32. It is to be hoped that while incarcerated, the defendant will receive treatment that will minimize the risk of his re-offending. Nevertheless, given his history, specifically that he was arrested in this case barely six months after his period of supervised release expired, lifetime supervision is necessary to ensure as much as possible that he never again will pose a danger to children. Accordingly we ask that the Court impose a sentence of lifetime supervision in this case..

      Respectfully submitted,

      JEFFREY A. TAYLOR
      United States Attorney

      /s/
BY:   PATRICIA STEWART
      Assistant United States Attorney
      D.C. Bar Number 358910
      555 4th Street, N.W. Room 4247
      Washington, D.C. 20350
      (202)514-7064
      Patricia.Stewart@usdoj.gov