UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | Crim. No. 07-199(EGS) |
| v. | ) ) ) |  |
| STEVE HOUCK | ) ) ) |  |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant, Steve Houck, through undersigned counsel, respectfully submits his Memorandum in Aid of Sentencing.

**Procedural Background**

Mr. Houck was arrested on July 2, 2007 on a criminal complaint charging him with attempt to entice a minor and transportation of child pornography. On July 3, 2007 he appeared before Magistrate Judge Robinson for initial appearance. Pursuant to the government's request for pretrial detention Mr. Houck was held without bond pending his detention hearing. On July 7, 2007 Mr. Houck waived his right to a detention and preliminary hearing. Mr. Houck has been incarcerated since the initial appearance.

On October 4, 2007, Mr. Houck entered a guilty plea to a criminal information which charged him with Transporting Child Pornography in violation of 18 U.S.C.§ 2252A(1). Pursuant to the conviction Mr. Houck faces a mandatory minimum sentence of fifteen years, a maximum sentence of forty years incarceration, a minimum term of five years of supervised release and a maximum term of life. Mr. Houck will have to pay a special assessment of $100.00 dollars and

he is subject to a maximum fine of $250,000.00 dollars . Mr. Houck will appear for sentencing on February 15, 2008.

### The Plea Agreement

The guilty plea was entered pursuant to a plea agreement that was negotiated and carefully worked out by the parties. The plea agreement incorporated four Specific Offense Characteristic or enhancements that applied to his overall criminal conduct. See Plea Agreement at 3. Under the plea agreement, the parties contemplated a Base Offense Level 22. With the four enhancements, Mr. Houck's final Base Offense Level would have reached level 35.

In the Pre-Sentence Investigation Report (PSR), Probation Officer Michael Penders, included a five point enhancement pursuant to USSG § 2G2.2(b)(3)(B). See PSR ¶ 21. The five point enhancement substantially raises Mr. Houck's Base Offense Level and corresponding guideline prison range. Under the agreed plea agreement, Mr. Houck's guideline range per Base Offense Level 33 and Criminal history II would have resulted in a prison range of 151 to188 months after the adjustment for acceptance of responsibility. This range covers the required mandatory minimum sentence of 180 months.

Under the Probation Office's revised PSR, Mr. Houck's sentencing guideline range is 235 to 293 months in prison. See PSR ¶ 56  Alternatively, Probation Officer Michael Penders indicated that if the Court determined that § 2G2.2(b)(3)(B) did not apply, § 2G2.2(b)(3)(F) did apply to the disputed criminal condcut. Id at 22. Application of § 2G2.2(b)(3)(F) results in a final Base Offense Level 34 and a corresponding guideline prison range of 168 to 210 months after the reduction for acceptance of responsibility. For reason that will be discussed below, Mr. Houck requests that the Court find that the appropriate sentencing guideline range is 168 to 210

months of incarceration and that the Court impose a prison sentence of 188 months.

### ARGUMENT IN SUPPORT FOR A PRISON SENTENCE OF 188 MONTHS

Since he was incarcerated on July 3, 2007 Mr. Houck has come to the sobering realization that he may be incarcerated for the next two decades. During this extensive incarceration Mr. Houck will miss out on many significant aspects of family life. Perhaps, the greatest loss will be his inability to see his mother again. His mother, Raymell Houck, is 74 years old and the travel and emotional demands may prohibit her from visiting Mr. Houck in prison. By the time he is released from prison, his young grandson Brandon will be an adult. Meanwhile, Mr. Houck will leave prison when he is in late sixties or early seventies. Regrettably, these are consequences that Mr. Houck brought upon himself.

It is very disconcerting that Mr. Houck at the age of fifty two resumed the criminal behavior that previously cost him his freedom. As the PSR points out, Mr. Houck has a previous conviction for similar conduct. In 2000 Mr. Houck was convicted for distributing child pornography. See PSR ¶ 33 That conviction resulted in four years of incarceration, which was followed by three years of supervised release. Regrettably during his incarceration Mr. Houck did not receive the treatment that would have identified the depth of his illness. The impact of the prior conviction cannot be underestimated since it's the predicate offense for the mandatory minimum sentence of 15 years that he is now facing.

It is truly mystifying that Mr. Houck would exhibit such a total disregard and lack of appreciation for the consequences of his conduct as it relates to children. He knows that his level of participation only perpetuates violence against children. Its mystifying because Mr. Houck is the father of two daughters. Reliable information suggests that he actively participated in raising

his daughters, and that he never displayed any immoral and/or criminal behavior towards them. That being said, the government, and the Court must be extremely frustrated with Mr. Houck's repeated contacts with the criminal justice system. The question now is how to balance the various goals of sentencing in imposing an appropriate disposition. Clearly, the sentence has to incorporate a punitive component that responds to the extensive harm caused by Mr. Houck

While his present situation is by all means bleak, Mr. Houck has maintained a positive outlook for the remainder of his life. Mr. Houck has never blamed his present situation on anyone. He acknowledges that he alone is responsible for his present predicament. Mr. Houck's hope is reflected in his desire to receive treatment for the illness that has devastated his life. He is cognizant that once he is released from prison, the Court can order supervised release for the remainder of his life. Supervised Release will be in addition to the requirement for sexual offender registration. Thus, when he is released in his late sixties or early seventies, Mr. Houck will still be subject to reincarceration.

I     **OUTSTANDING OBJECTIONS WITH THE REVISED PRE-SENTENCE INVESTIGATION REPORT**

a.     **Mr. Houck Objects to the Application of The Five-Point Enhancement of pursuant to U.S.S.G. § 2G2.2(b)(3)(B) For Distributing Child Pornography "For The Receipt, Or Expectation Of Receipt, Of A Thing Of Value, But Not For Pecuniary Gain."**

The only Guidelines dispute in this case is the five-point offense enhancement for distributing child pornography "for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." PSR, ¶ 21; see also U.S.S.G. § 2G2.2(b)(3)(B). Under the application note to § 2G2.2(b)(3)(B), "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain," means

>any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value but not for profit.  "Thing of value" means anything of valuable consideration.  For example, in a case involving the bartering of child pornographic material, the "thing of value" is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received.

U.S.S.G. § 2G2.2(b)(3)(B), application note.  In order for U.S.S.G. § 2G2.2(b)(3)(B) to apply, the distributor of child pornography  must have "expect[ed]–rather than just hope[d]–to receive a thing of value" in return.  United States v. Maneri, 353 F.3d 165, 168 (2d Cir. 2003).

Under the plain terms of the guideline and the undisputed facts of this case, the § 2G2.2(b)(3)(B) enhancement does not apply here.  First of all, Mr. Houck and Detective Palchak were having a long discussion regarding Detective Palchak's on going sexual abuse of a fictional "crack heads daughter".  At some point Mr. Houck indicates that he would like to see "a commitment pic to know you are real."  Contrary to the government's assertion there are no facts with which to impute on Mr.  Houck a desire for a photograph in order to establish "that neither was a law enforcement officer." See Gov. Sent. Mem ¶ 14.  There is nothing in the instant messaging transcripts that supports that claim.  The government's position is further undermined by its admission that "[t]here is no record in the transcript of the precise point in the conversation during which the photograph was received." Id .  The government then proceeds to rely on Detective Palchak's memory of an instant messaging discussion that took place six months before they filed their sentencing memorandum.  ("Detective Palchak, in reviewing the transcript, recalls...) Id.  The government admits that there is an absence of an explicit agreement between Detective Palchak and Mr. Houck regarding the exchange of child pornography.  Noteworthy is the Statement of Facts that was authored by the government which does not include any of these

assertions. Accordingly, the facts of the case do not support the enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(B).

In the absence of the 5-point enhancement, Mr. Houck's Guidelines range should be 168 to 210 months pursuant to a final Base Offense Level 34 and Criminal History Category II. Undersigned counsel agrees with the Probation Officer's alternative guideline calculation that a two level enhancement applies pursuant to USSG § 2G2.2(b)(3)(F). See PSR ¶ 22

**II.     PURSUANT TO 18 U.S.C. § 3553(a), 18 U.S.C. § 3582, 18 U.S.C. § 3661 AND 28 U.S.C. § 991(b)(1)(B)  MR. HOUCK REQUESTS A PRISON SENTENCE OF 188 MONTHS WHICH WILL BE FOLLOWED BY LIFETIME SUPERVISION**

In United States v. Booker, the Supreme Court held that the mandatory sentencing guidelines were unconstitutional as applied. 125 S. Ct. 738 (2005)  The Court further held that judges are required to "take account of the Guidelines together with other sentencing factors," and to "consider" the guidelines along with all the other required factors (emphasis added).  The Court is not bound by the guideline range and there is no requirement that a sentence be within the guideline range.  The guideline range is just one factor to be considered along with the mandatory statutory factors delineated in 18 U.S.C. § 3553(a). "In the post-Booker world, the court must calculate and consider the applicable Guidelines range but is not bound by it." United States v. Dorcely, 454 F.3d 366, 375 (D.C. Cir.), cert. denied, 127 S. Ct. 691 (2006).

The none guideline factors include, among others, the nature of the offense, the defendant's history, the need for the sentence to promote adequate deterrence and to provide the defendant with the needed educational or vocational training, and pertinent policy statements issued by the sentencing commission, and the need to avoid unwarranted sentencing disparities among similarly situated defendants. U.S. v. Clifton Price 409 F.3d 436, 442 (D.C. Cir. 2005)

Moreover, Sentencing Courts have a continuing duty to "[w]eigh the purposes of sentencing listed in the Sentencing Reform Act." U.S. v. Jabber 362 F.Supp.2d 365, 369 (D. Mass. 2005).

The primary purpose of the sentencing statute, 18 U.S.C. 3553(a), is for the sentencing court to impose a sufficient sentence, but not one that is greater than necessary. 18 U.S.C. § 3553(a) allows the Court to take into account the particularized factors of Mr. Houck's life and not just the fact of his criminal conduct. This approach is consistent with the objectives of 28 U.S.C. § 991, the enabling statute of the Sentencing Commission. Both the enabling statute and the sentencing statue contemplate a flexible and particularized approach to sentencing determinations.

The D.C. Circuit has also recognized that mitigating evidence that is not relevant to the Guidelines calculation may well be relevant to the district court's analysis of the Section 3553(a) factors. See United States v. Ayers, 428 F.3d 312, 315 (D.C. Cir. 2005).[1] It is through the consideration of all of these relevant sentencing factors that courts ensure they reach a "just punishment" as required by 18 U.S.C. § 3553(a).

After equal consideration of all of the Section 3553(a) factors, the court has the authority (I) "to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence." United States. v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005).

---

[1] At the time the Guidelines were mandatory, courts were discouraged from considering factors such as the defendant's age, education and vocational skills, mental and emotional conditions, physical condition, and ties to family and the community. See U.S.S.G. § 5H1.1-4, 6, 11. These factors were "not ordinarily relevant" in determining an appropriate sentence. Post-Booker, however, these are precisely the types of considerations courts must now evaluate when imposing sentences.

7

**a.**     **The Nature and Circumstances of the Offense**

18 U.S.C. § 3553(a)(1) directs the Court to look at the nature and circumstance of the offense and Mr. Houck's history. Mr. Houck is before the Court after the commission of very serious criminal offenses. Mr. Houck's criminal conduct consisted of actively looking for inappropriate internet chat rooms in order to meet other pedophiles. After believing that he had met another pedophile, Mr. Houck discussed the possibility of making arrangements to have sex with a child. Once it was established that Mr. Houck's conduct was in clear violation of the law, Detective Timothy Palchek obtained a search warrant for Mr. Houck's residence. Inside the residence the authorities found a significant amount of child pornographic material. The seized material which is relevant to the commission of the criminal conduct is included as specific offense characteristics or is covered by the forfeiture provision of the plea agreement.

**b.**     **History and Characteristics of Mr. Houck**

Mr. Houck is before the Court facing his second criminal conviction. His prior conviction took place when he was forty four years old. Other than the two convictions, Mr. Houck has had no contacts with law enforcement. Mr. Houck seems to have lived a seemingly ordinary life in which he graduated from High School and shortly after got married and started a family.

Mr. Houck and his wife divorced when their two daughters were teenagers. After the divorce, Mr. Houck relocated to Virginia while his ex-wife and daughters settled in Indiana. During the separation, the daughters would spend alternate holidays with their parents. The custody arrangement also allowed Mr. Houck to have his daughters for part of the summer vacations. His oldest daughter, Susan Houck, remembers fondly the times that she and her sister

would get to spend with their father in Virginia. Ms. Houck remembers that her father always followed through with his parental responsibilities. In fact she remembers that Mr. Houck never missed a visitation.

Ms. Houck's relationship with her father became close when she moved from Indiana to Virginia to live with him. Mr. Houck encouraged the move since he saw that his daughter was struggling as a single mother at the age of seventeen. Ms. Houck remembers how her father provided a sanctuary where she could concentrate on raising her son. Ms. Houck fondly recalls how comfortable she felt with her dad and that she could talk in complete confidence with him.

After Mr. Houck was arrested and convicted in 2000, Ms. Houck moved to Pennsylvania. During his first incarceration Mr. Houck stayed in weekly contact with his daughter and his mother. After his release from prison, Mr. Houck would drive weekly from Virginia to Pennsylvania to visit them. During his visits, Mr. Houck would take it upon himself to fix anything relating to the maintenance of the house. Mr. Houck was an all around reliable handyman who would happily do things for his daughters and mother.

As verified by the PSR, Mr. Houck has a consistent work history dating back to 1986. With each year Mr. Houck's salary grew and the change in his employment suggests that he was entrusted with greater responsibility. When he was arrested for the instant offense, Mr. Houck was making a very good salary and he had a highly sought after job. His employer, Mr. Seth spoke effusively of Mr. Houck's ability, diligence and commitment to his work. Without a doubt, Mr. Houck was a valuable employee.

While Mr. Houck's conduct calls for a severe punishment, he does bring a verified history of being a productive citizen. Mr. Houck has always taken pride in his work ethic, and

his commitment to caring for his daughters and mother. Mr. Houck never abdicated his familial responsibilities and he was never a drain on the government.

**c.      The Sentence should reflect the Seriousness of the Offense**

Pursuant to 18 U.S.C. § 3553(a)(1)(2)(A) Mr. Houck's sentence must reflect the seriousness of the offense. Because Mr. Houck committed a serious violation, the Court has to punish him and strike the appropriate balance between the punitive sanction and the long term goal of rehabilitation. As it stands now Mr. Houck is facing a mandatory minimum sentence of 180 months. The critical question is whether the requested sentence of 188 months "promote[s] respect for the Law and provide[s] just punishment."

Removing Mr. Houck from the community for 188 months will more than adequately protect the community. Moreover, the sentence sends the unambiguous message that his behavior has been completely unacceptable and repugnant. During the 188 months of incarceration Mr. Houck can finally begin the process of rehabilitation that has never taken place. Although Mr. Houck's prior rehabilitation efforts were a complete failure, 188 months of incarceration will leave him no choice but to confront the illness that has devastated his life and which indirectly destroys the lives of children.

If view of all of the facts and circumstances of this case, it is a reasonable request that Mr. Houck receive a sentence that allows him to spend some of his remaining years out of prison. Mr. Houck early on acknowledged the seriousness of his criminal conduct and immediately took responsibility for his actions. When the police arrived at his residence with the search warrant he admitted his criminal culpability without any hesitation. Within hours he gave a detailed statement concerning his criminal conduct. In the first meeting with undersigned counsel, Mr.

Houck expressed his desire to resolve the case by admitting his guilt and accepting the consequences.

A sentence of 188 months of incarceration will be a constant reminder of the gravity of his criminal conduct. Because he will be on life time supervised release and offender registration, the sentence of 188 months will be an appropriate sentence that takes into account his recidivist behavior. Supervised Release will subject Mr. Houck to a strict supervision regimen which will include reporting to a probation officer, submitting monthly reports and report any change in his residence. All of these factors will weigh heavy in his everyday life. It is safe to assume that with appropriate treatment during the course of 188 months of incarceration, the likelihood of recidivism will diminished in conjunction with his age. Seen in this light, 188 months of incarceration would be a sufficient sentence that is not "greater than necessary."

**d.      The sentence should afford adequate deterrence to criminal conduct**

A sentence that removes Mr. Houck from the community for 188 months, will adequately eliminate his participation in perpetuating the violent and indefensible abuse of children. When he is released from prison, in his late sixties or early seventies, Mr. Houck will certainly bare in mind that the Court easily returned him to prison. Thus a prison sentence of 188 months will achieve the dual goal of instilling respect for the law while simultaneously protecting the community. In his prior criminal case, Mr. Houck did not face the substantial sentence that applies to this case. If incarceration did not make an impression when he was in his forties, one 188 months of prison at the age of fifty-two is bound to make him think long and hard about what he did.

e.     **The sentence should provide the most effective rehabilitation treatment**

18 U.S.C. § 3553(a)(2)(D) directs the Court to consider Mr. Houck's sentence in light of the educational or vocational training that will support his rehabilitation.  There is no question that Mr. Houck is in dire need of rehabilitation, specifically sexual deviancy treatment and education.  Mr. Houck is committed to taking advantage of every therapeutic program available in the bureau of prison. Mr. Houck wants treatment so when he is released, he will not re-offend. The Federal Correctional Institution at Butner, North Carolina and the Federal Medical Center in Devens, Massachusetts offer a comprehensive sex offender treatment program.  Thus, there are very good reasons to believe that through a systemic approach to treatment, Mr. Houck will be able to put his sickness behind him and gain control over the impulses that have largely destroyed his life to this point

**CONCLUSION**

For the foregoing reasons, undersigned counsel moves the Court to find that the appropriate sentencing guideline range is 168 to 210 months of incarceration and that the imposition of the low end of 188 months realizes the sentencing goals of 18 U.S.C. 3553(a).

Respectfully submitted,

A.J. Kramer
Federal Public Defender


_____/s/_____
Carlos J. Vanegas
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500