UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.       ) | Crim. No.  07-199 (EGS) |
| ) | Sentencing: July 24, 2008 |
| STEVE HOUCK ) | |
| ) | |
| ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant, Steve Houck, through undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing and character letters in support of his request that the Court impose a 180 month sentence in his case, and requests that these submissions replace the sentencing memorandum filed by prior counsel.

**Procedural Background**

As the record and prior pleadings in the case demonstrate, On July 2, 2007, following an undercover investigation by Detective Palchak of the Multi-jurisdictional ICAC Task Force, Mr. Houck was arrested on a criminal complaint charging him with attempt to entice a minor and transportation of child pornography.  He has remained at the D.C. Jail since his arrest.  On October 4, 2007, Mr. Houck entered a guilty plea to a criminal information which charged him with Transporting Child Pornography in violation of 18 U.S.C.§ 2252A(1).  Mr. Houck is scheduled to appear for sentencing on July 24, 2008.

1

**The Plea Agreement/ Guideline Calculation / Sentencing Recommendation**

As noted in the Pre-sentence Report (PSR), Mr. Houck's guilty plea subjects him to a mandatory minimum sentence of fifteen years (180 months), a maximum sentence of forty years incarceration, a minimum term of five years of supervised release and a maximum term of life. The parties are in agreement that the applicable guideline range is 180 to 210 months, based on a total offense level of 34 and a criminal history category II.[1]  Counsel submits that the mandatory minimum sentence of 180 months is sufficient but not greater than necessary to effectuate the enumerated sentencing goals in this case.

**Argument In Support of a Prison Sentence of 180 Months**

Mr. Houck is a 53 year old man who will be before the Court for sentencing on July 24, 2008.  He is facing a mandatory minimum sentence of 180 months, and an applicable guideline range of 180 to 210 months.  The issue for the Court is whether the 180 month mandatory minimum sentence is sufficient to comply with the statutory sentencing goals.  Counsel submits that it is. [2]

Mr. Houck was born and raised in Lancaster, Pennsylvania.  He graduated from high

---

[1]  Counsel would note that the PSR suggests an additional 5 level enhancement, which the parties agree should not apply.  Thus defendant is requesting that the Court adopt the parties' recommendation that the applicable guideline range is 168 to 210 months, which becomes 180 months to 210 months because there is a 180 month statutory minimum in this case.

[2]  Mr. Houck will either be in prison or on strict supervision for at least twenty years. He will be required to register as a sex offender while on supervision.  In addition, the Bureau of Prisons now has the authority to seek to have defendants committed at the end of their  sentences.  Thus it appears that a 15 year sentence in this case, particularly in light of the defendant's age, is more than sufficient to satisfy the all the goals of sentencing in this case.

school in New Holland, Pennsylvania. He married and had two daughters. He and his wife separated after seven years, but he continued to be very active in his daughter's lives. [See, Character Letters of daughter and mother]. He always paid child support, and maintained positive relationships with his daughters. In fact both of his daughters came to live with him when they were teenagers. He has had a healthy relationship with his daughters, and has kept his grandson on occasion for his daughter. There is no indication of any abuse or problems in his relationships with his daughters or grandson.

He has always worked hard to support himself and his family. Over the years he developed an expertise in electronics and communications. In 1991 he moved to the D.C. area to take a job as a communications specialist with the Federal Communications Commission. He worked at the FCC until his arrest in 2000. Following his release from prison in that case, he again found employment in his field, and remained employed until his arrest in this case. In addition, work and family commitments, he has been very involved in public service, and has contributed a great deal to the community through his volunteer work for search and rescue organizations. [See, Character Letter of P. Hebert].

Counsel would also note that the way Mr. Houck has handled himself responsibly since his arrest. He has been honest about his involvement in the offense from the start. He was cooperative with the police, and gave a video-taped statement to police the evening of his arrest. Within a relatively short period of time, he was engaged in plea negotiations with the government. It was clear from the beginning that the case would resolve without a trial, and without litigating motions. His acceptance of responsibility was early, complete, and

unequivocal.[3]  Since his arrest, he has accepted responsibility, has accepted the inevitability that he must be punished, and has started to put this dysfunctional and troubling behavior behind him.

     Understandably, these have been difficult times for Mr. Houck.  He has come to the sobering realization that he will be incarcerated for at least fifteen years, and maybe more.  During this extensive incarceration Mr. Houck will miss out on many significant aspects of daughters' lives and his grandson's life.  But perhaps most difficult of all is the reality that he will not likely see his mother again, except in an institutional setting.   Nevertheless, Mr. Houck has tried to be as productive as possible with his time in jail.  He has been helping with the educational classes at the D.C. Jail.  He works hard and appears to be well-regarded by the correctional staff. [See, Character Letter from D.C. Jail Adult Education Program].  Mr. Houck finds it a rewarding work, and continues to try to be as positive as possible as he prepares to spend at least fifteen years in prison.

     Notwithstanding the defendant's preoccupation with pornography and child pornography, which has obviously become a major problem for him, he has been a person who has contributed to society most of his life.  Thus counsel submits that a sentence of 15 years, which will be followed by years of strict supervision and continued sex offense registration, is reasonable, and is more than sufficient under all the circumstances in this case.

---

[3] Counsel recognizes that Mr. Houck sent a letter to the court requesting to withdraw his plea. However, the real purpose of that letter was to get new counsel because Mr. Houck had some reservations about his prior counsel. However, counsel was able to meet with the defendant and answer his questions. Since counsel's first meeting with Mr. Houck, counsel has repeatedly assured government counsel that he did not intend to withdraw his plea, and that he intended to go forward to sentencing with undersigned counsel.

**18 U.S.C. § 3553(a) Factors Support a Prison Sentence of 180 Months**

United States v. Booker 125 S.Ct. 738 (2005) marked the end of twenty years of mandatory federal sentencing guidelines. Thus the guideline range is now advisory, and the sentence must be imposed in accordance with the factors set forth in 8 U.S.C. 3553(a), taking into account the sentencing guideline range. The import of 18 U.S.C. 3553(a) is that the Court should impose a sentence sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in the statute.

The non- guideline factors include, among others, the nature of the offense, the defendant's history, the need for the sentence to promote adequate deterrence and to provide the defendant with the needed educational or vocational training, and pertinent policy statements issued by the sentencing commission, and the need to avoid unwarranted sentencing disparities among similarly situated defendants. U.S. v. Clifton Price 409 F.3d 436, 442 (D.C. Cir. 2005) Moreover, Sentencing Courts have a continuing duty to "[w]eigh the purposes of sentencing listed in the Sentencing Reform Act." U.S. v. Jabber 362 F.Supp.2d 365, 369 (D. Mass. 2005).

a.    **The Nature and Circumstances of the Offense / Seriousness of Offense**

18 U.S.C. § 3553(a)(1) directs the Court to look at the nature and circumstance of the offense and Mr. Houck's history. Mr. Houck is before the Court after the commission of very serious criminal offenses.[4]    Mr. Houck's criminal conduct primarily consisted of engaging in

---

[4] Moreover, while there is some logic behind the government's claim that the demand for the pornography fuels the industry, it is not appropriate to punish the defendant as if he was the person creating the images or profiting from the images. Counsel submits that the requested 180 month sentence is sufficient to send the appropriate message to consumers of child pornography.

chats in on-line internet chat rooms associated with child pornography, collecting child pornographic images, and transferring child pornographic images to Detective Palchak, who was acting in an undercover capacity on-line.[5]  Detective Palchak engaged him in on-line conversations over a three week period.  During that time Detective Palchak and the defendant engaged in numerous fictitious conversations.  The defendant's conduct stems from an apparent addiction to the world of on-line chatting and the collection of pornographic and child pornographic materials.  While his conduct his very serious, counsel submits that his case is distinguishable from the cases which involve actual contact with minors, or involve travel to a location to try to meet a minor.[6]  Also, he was not engaged in commercial activity and was not profiting from the images.

Following the three week investigation, a search warrant was obtained.  Upon execution of the search warrant, Mr. Houck was found at his computer doing what he was fixated with - chatting on-line and collecting images.

Obviously, Mr. Houck's sentence must reflect the seriousness of the offense.  As it stands now Mr. Houck is facing a mandatory minimum sentence of 180 months.  The critical question is

---

[5]  While the guilty plea in this case stems from the transfer of child pornographic images, his on-line activities were not solely related to child pornography.  He also visited adult pornography web sites, and downloaded adult pornographic images, which probably outnumbered the images relating to minors.  It appears that his relapse into the world of on-line child pornography began with visits to the adult sites, which triggered his fascination and addiction to the sites dealing with minors.

[6]  This is significant because psychologists and social workers specializing in this field recognize that many internet child pornographers can be addicted to the on-line activities, including fantasy discussions about minors, but without having contact with minors.  Those offenders are content with the anonymity and easy access of the internet, and are not likely to make the leap to a contact offense.

whether the requested sentence of 180 months is sufficient to "promote respect for the Law and provide just punishment." Counsel submits that it does. Removing Mr. Houck from the community for 180 months will more than adequately protect the community. Moreover, 180 months is more than sufficient to send the unambiguous message that his behavior has been completely unacceptable. Counsel contends that the statutory enhancement, making this a 15 year mandatory minimum offense, has largely taken into account the seriousness of the offense, the need for just punishment, the need for deterrence, and the need to promote respect for the law. [7]

**b**.    **History and Characteristics of Mr. Houck**

Notwithstanding Mr. Houck's two recent offenses, Mr. Houck's background and history are quite positive. Mr. Houck seems to have lived a seemingly ordinary life in which he graduated from High School, found employment, got married, and started a family. When Mr. Houck and his wife divorced, he relocated to Virginia while his ex-wife and daughters settled in Indiana. During the separation, the daughters would spend alternate holidays with their parents. The custody arrangement also allowed Mr. Houck to have his daughters for part of the summer vacations. His oldest daughter, Susan Houck, remembers fondly the times that she and her sister would get to spend with their father in Virginia. Ms. Houck remembers that her father

---

[7] The statutory and guideline penalties in child pornography cases do not appear to based on empirical study, or other sound sentencing policy often relied upon by the Sentencing Commission. The penalties have been steadily increased in spite of evidence and recommendations from the Commission to the contrary. See, Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines , at http://sentencing.typepad.com (June 10, 2008). Thus the enhanced statutory penalty in this case has sufficiently taken these factors into account.

always followed through with his parental responsibilities. In fact she remembers that Mr. Houck never missed a visitation.

Ms. Houck's relationship with her father became close when she moved from Indiana to Virginia to live with him. Mr. Houck encouraged the move since he saw that his daughter was struggling as a single mother at the age of seventeen. Ms. Houck remembers how her father provided a sanctuary where she could concentrate on raising her son. Ms. Houck fondly recalls how comfortable she felt with her dad and that she could talk in complete confidence with him.

After Mr. Houck was arrested and convicted in 2000, Ms. Houck moved to Pennsylvania. During his first incarceration Mr. Houck stayed in weekly contact with his daughter and his mother. After his release from prison, Mr. Houck would drive weekly from Virginia to Pennsylvania to visit them. During his visits, Mr. Houck would take it upon himself to fix anything relating to the maintenance of the house. Mr. Houck was an all around reliable handyman who would happily do things for his daughters and mother.

As verified by the PSR, Mr. Houck has a consistent work history dating back to 1986. With each year Mr. Houck's salary grew and the change in his employment suggests that he was entrusted with greater responsibility. When he was arrested for the instant offense, Mr. Houck was making a very good salary and he had a highly sought after job. His employer, Mr. Seth spoke effusively of Mr. Houck's ability, diligence and commitment to his work. Without a doubt, Mr. Houck was a valuable employee.

In addition to the work history, Mr. Houck has also given a great deal to the community, volunteering his services in the search and rescue community . Mr. Houck has always taken pride in his work ethic, and his commitment to caring for his daughters and mother. Mr. Houck

8

never abdicated his familial responsibilities and he was never a drain on the government. His positive history and community contributions should mitigate in favor of a sentence at the low end of the guideline range in his case.

c.     **The sentence should afford adequate deterrence to criminal conduct**

A sentence that removes Mr. Houck from the community for 180 months, will adequately deter further criminal conduct. Assuming the BOP releases him from prison at the conclusion of his sentence, he will be in his mid to late sixties. As noted above, he will be on very strict supervision following his release, and will have constant reminders that he will be returned to prison if he violates any conditions. He will also have to register as a sex offender wherever he lives or works. Thus a prison sentence of 180 months is more than sufficient to achieve the goals of deterrence, instilling respect for the law, and protecting the community.

**Conclusion**

In view of all of the facts and circumstances of this case, it is a reasonable request that Mr. Houck receive a sentence that allows him to spend some of his remaining years out of prison. Mr. Houck early on acknowledged the seriousness of his criminal conduct and immediately took responsibility for his actions. When the police arrived at his residence with the search warrant he admitted his criminal culpability without any hesitation. Within hours he gave a detailed statement concerning his criminal conduct. In the first meeting with prior counsel, Mr. Houck expressed his desire to resolve the case by admitting his guilt and accepting the consequences.

Mr. Houck has already begun his rehabilitation. He now recognizes that he can not allow

himself to indulge in the world of adult pornography, since it will naturally lead him to the sites relating to child pornography.[8]  He has no choice because he has no access to the internet, and is filling his time with positive efforts which are helping him prove that he can live without giving in to this compulsion.  He will get whatever programming is being offered by the BOP.  Significantly, when he is released from prison he will have the benefit of the resources available through the Probation Department, which historically is far better than anything the BOP has to offer.  Thus the mandatory minimum sentence, followed by a period of supervised release makes the most sense, considering the sentencing options available in this case.

A sentence of 180 months of incarceration will be a constant reminder of the gravity of his criminal conduct.  In addition, since he will have to comply with supervised release conditions and offender registration for the rest of his life.  Considering the defendant's age, as well as the other sentencing factors in this case, the proposed 180 month sentence is the most reasonable and appropriate sentence in this case.

Wherefore, for the foregoing reasons, undersigned counsel moves the Court to find that the appropriate sentencing guideline range is 168 to 210 months of imprisonment and that the imposition of the mandatory minimum 180 month sentence , and is "sufficient but not greater than necessary" to realize the sentencing goals of 18 U.S.C. 3553(a).

---

[8] Defendant also seems to realize that he should have continued with the counseling and treatment he received following his first conviction.  His supervision only required him to participate in treatment for a year.  He did not appreciate that he needed to continue with counseling and limitations on internet activities, particularly since the internet provides such easy access to inappropriate chat opportunities and child pornographic material. He now seems to understand that he must receive counseling and treatment for life.

        Respectfully submitted,

        /s/
Howard B. Katzoff (Bar # 348292)
717 D Street, NW Suite 310
Washington, D.C. 20004
(202) 783-6414
Attorney for Steve Houck

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Memorandum was electronically served on Patricia Stewart, Esquire, Office of the United States Attorney, 555 Fourth Street, N.W., Washington, D.C. 20530, and U.S Probation Officer Michael Penders, 333 Constitution Avenue, N.W., Washington, D.C. 20001, this  22nd  day of   July   , 2008.

        /s/
        Howard B. Katzoff

Case 1:07-cr-00199-EGS   Document 24   Filed 07/22/2008   Page 12 of 12



## Adult Basic Education Program
## Don't Forget Us

April 1, 2008

From: **Mr. Victor Akuchie**
      Acting Principal for Central Detention Facility

Through: **Mr. Raheem Jenkins**
        Director of Programs for Central Detention Facility

To: **Whom It May Concern**

Re: **Mr. Steve Houck DCDC # 315-323**

Dear Reader,

    Mr. **Houck** is an active participant in the **Adult Basic Education Program** being offered by the **Central Detention Facility**. His participation has been from the very start of the program. Mr. **Houck** is currently the **Dean of Students for the Central Detention Facility Don't Forget Us GED Program**. He is responsible for the teaching and testing of all students enrolled in the program. In doing so he has become a valuable asset to our program.

 Mr. **Houck** is very responsible and handles all assignments given to him with respect to aiding in the growth of not only himself as a human being but the growth of the students that he takes the time out of each day to teach. Mr. **Houck** goes above and beyond the call of duty to strengthen the minds of those around him. I would at this time like to thank you dear reader for your valued time and patience.

July 8, 2008

Honorable Emmet Sullivan
United States District Court
333 Constitution Avenue   NW
Washington DC  20001

Your Honor,

    My name is Phillip Hebert, and I am writing to you on behalf of Steve Houck who is to come before you for sentencing. I am a public safety employee who works for Baltimore County Maryland.

    I have known Steve for approximately ten years. During this period I have seen and been a part of much of the public service work that Steve has been involved with. In Steve's earlier years he was a very active member of the Search and Rescue community and was instrumental in organizing and formalizing these activities at the State level in Pennsylvania. He participated in many searches, helped organize, and equip the teams with gear. He was solidly involved in the development of communications protocols and policies.

    As an avid Amateur Radio Operator ( which is how I first met him ), Steve has worked tirelessly to expand the scope and capabilities of the Emergency Communications networks which serves the States of Virginia, West Virginia, Maryland, Southern Pennsylvania, and the District of Columbia. Steve was a member of the Network Engineers Repeater Association (http://www.neradc.org/ ) and a very major part of our efforts to expand and maintain a large and complex system. I had the opportunity to travel extensively with Steve in these efforts, and at no time was his demeanor anything but professional and dedicated. Our organization has been deeply affected by his absence.

    Several times I also had the chance to visit him at his workplace in Fairfax. He was very happy with his work, and actively involved in several communications projects in the Homeland Security arena. He was starting to travel and representing the firm he was working for well. His boss, Seth ( ? ) seemed very pleased with Steve's work performance.

    Since Steve's arrest and detention, I have maintained a regular correspondence with him. From Day One, he has professed a profound regret for his actions and the penalties imposed upon him. He has expressed a desire repeatedly for medical assistance with his problem which he openly admitted as an addiction. He has acknowledged on many occasions that he has made a serious error in his life. As with any addiction, idle time is the enemy. I am convinced that, had Steve received treatments and had been under observation for his addiction, this would never have occurred. There is such a stark contrast to all of the good things that he has accomplished and is capable of compared to the effects of this addiction upon him.

    I would respectfully ask that you consider Steve's past contributions to the communities in which he has lived in. He is a good man, with a lot of potential, that has a serious addiction problem. He needs help and rehabilitation so that he can return and provide a positive effect on our community.

Sincerely,

*[signature]*

Phillip Hebert
105 Highgate Ct
Owings Mills MD  21117-3302
410-458-0365
phil@n3cdy.com

6/3/08

To whom it may concern,

Through the years Steve has been my saving grace many times. He has always willing to help me with any maintenance around my house as needed, since I have been widowed for 15 years and didn't maintain much of the larger household maintence. I could always count on Steve to be there.

There have been numerous times that Steve has helped me go through important documents that I haven't understood. I trusted him to make decisions on my behalf.

Steve had become successful at his most recent job and has always making sure I was able to make ends meet. I was short paying my health insurance and he wrote me a check. He would also leave money in the house just in case I needed it because he knew I wouldn't ask.

He is missed dearly. His company and willingness to help was a blessing. My son had become one of my care takers and life hasn't been the same.

Steve's Mother
Raymell Houck

Mr. Howard Katzoff
717 D Street N.W. Suite 310
Washington DC 20004


July 10, 2008


To whom it may concern:

This letter in in regards to my father, Steve R. Houck in reference to his character not only as a father, but as a individual. In my childhood years I didn't have much of a relationship with him because my parents got divorced when I was only 5 years old. Growing up seeing my father every other Holiday and every summer, it was hard to build a constant father/daughter relationship. But he was always there to provide for me and take care of me when I was around. As I got older, I chose to live with my father. It was a crucial time in my life, teenage years. He made sure I went to school everyday, did my homework and was passing. My friends always though my dad was an ok guy because they saw the relationship we had together. Never once were there any problems with my friends staying the night. He also showed that he can be a great dad and demonstrated the love and care a father is suppose to. I knew he showed it during visitations, but this time it wasn't just for a few weeks.

A few years later was the first time my dad was sent away. I don't feel it was the appropriate help someone in his condition needed. It may have scared him and everyone else in our family, but it wasn't the cure. When he got out, he was still the same dad to me. Making sure all my needs were met even though I lived 300 miles away. He has a great relationship with my boyfriend and his family as well. In my adult life, I wish I could have my dad in my life more often. Due to the lack of treatment my father received the first time, his incidents reoccurred and put him back in a correctional facility.

I could list all the wonderful thing my dad has done for me in my life but that isn't want this is all about. I can say, he's never physically hurt me or sexually abused me in any way. This nightmare would be a lot easier to grasp if that be the case, but since it isn't, please observe my judgment of my father, Steve R. Houck. Please reposition him out prison and into some facility that would care for this mental condition that is effecting his way of thinking.

Thank you for taking the time to read this and consider all recommendation before an unjust verdict is set. No one wants help for my father more than his family. We can't understand what he is thinking or going through, but we are there to support him in getting the help he needs.

Thank you,

*Melissa A. Houck*
Melissa A. Houck

Steve Hauck
Pg 1.

To whom it may concern;

I am writing in regards to my father Steve Hauck.

My father means a lot to me. I am a single mother, I own a house, work full time and have your typically busy schedule balancing my son, homework, activities, my household, work & occasionally time for myself. My father was a huge "fan" of mine. He was always supportive, even when I was wrong. He was able to tell me if I was wrong too. I felt encouraged by him in my career path and as a mother. There's no doubt that we did butt heads but we let any of that grow in between us.

So often I would confide in my father and ask him for advice. He wouldn't even talk to my mother about my personal matters if I requested that of him.

My father is a very intelligent man. I often joke about him being a McGyver of sorts; "I'll need a paperclip, bubblegum and a mirror to fix this." He was very resourceful.

Any maintenance around my house quickly became his responsibility. We frequented Home Depot where he wouldn't hesitate to purchase any supplies needed to get a job done.

Pg. 2

I would even purposely not clean my fish tank, which is 40 gallons, because I knew he would visit my house, briefly gripe that my tank was dirty and my fish would die. He'd always clean it though!

Dad was always willing to help with any of my bills or personal needs my son or I had. He knew support wasn't consistent enough and my pay wasn't high enough to make ends meet.

His generosity didn't stop with me, he did the same for my Grandmother & even my mother whom he has been divorced from for somewhere around 20 years. He'd actually promised my mother new glasses because her vision was progressively becoming worse due to an ex husband of hers hitting her.

Dad would stop along the side of the road to help motorists in need. He volunteered many times in DC for the 4th of July celebration. He was also a volunteer firefighter and part of search & rescue groups in PA & VA.

There are many good things for me to say about my father. He means a lot to me & has been a reliable person in my life. I miss him, there's no doubt there's a large hole in my life. I can no longer call my father up when there's a leak in my ceiling or when my car

is making a noise or when my mom or sister and I aren't seeing eye to eye. I love him and pray for the best.

Susan Houck.